**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHUBB INSURANCE COMPANY OF EUROPE SE, | ) | CASE NO.  1:09-mc-0116 |
| | ) | |
| | ) | JUDGE BOYKO |
| Applicant, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| Respondent. | ) | Doc. No. 4 |

Before the court is the motion of Givaudan Flavors Corporation ("Givaudan") and Givaudan Suisse SA ("Givaudan Suisse"; collectively "movants") to intervene in the instant case between applicant Cubb Insurance Company of Europe ("Chubb") and Zurich American Insurance Company "Zurich") and to quash Chubb's subpoena of certain documents from Zurich for use in litigation in Switzerland.[1]  Doc. No. 4.  Chubb opposes both parts of movants' motion.  Doc. No. 5.  For the reasons given below, movants' motion to intervene is GRANTED and its motion to quash is DENIED.

I.

Except where otherwise noted or described as "alleged," the parties do not

---

[1] Movants assert "objections" to the subpoena.  The court construes these objections as a motion to quash the subpoena on the ground that it is contrary to Swiss law.

dispute the following facts.  Givaudan Suisse is the parent company of Givaudan.  On August 7, 2009, Givaudan Suisse filed in the Commercial Court for the Canton of Zurich a Statement of Claim against a number of its European insurers, including Chubb ("the Swiss action").  Chubb is an umbrella insurer of Givaudan pursuant to a policy providing coverage for the year 2003.  Zurich is the relevant underlying primary insurer for Chubb's umbrella policy and is not a party to the Swiss action.  The Swiss action alleged that Chubb and other insurers had wrongly failed to pay Givaudan, their insured.  Chubb alleges that its response in the Swiss action is due February 10, 2010.

Chubb's umbrella policy and Zurich's primary policy insure Givaudan against, *inter alia*, suits alleging liability due to injury arising from product defects.  The umbrella policy aggregates all claims arising from the same alleged cause as a single damage claim.  The umbrella policy also provides that claims shall be deemed made at the earlier of either (1) at the time the claim is made in writing against an insured or the insured's insurance department or (2) when the insured or its insurance department first become aware of circumstances from one which could seriously and reasonably expect a claim to be raised against the insured.

The Swiss litigation includes a dispute regarding the application of the umbrella policy provisions governing when claims are deemed made.  In particular, Chubb alleges that certain of Givaudan's insurance policies contained coverage exclusions for claims prior to 2003 arising from injuries caused by butter flavoring or diacetyl.  One policy containing this exclusion, Chubb alleges, is Givaudan's primary policy issued by Zurich.  Chubb seeks to learn the reasons for this exclusion to further its Swiss litigation.

On December 17, 2009, Chubb filed in this court an application pursuant to 28

U.S.C. § 1782 ("§ 1782") for discovery in aid of a proceeding pending before a foreign tribunal. Chubb sought assistance with service of a subpoena of Zurich to provide four classes of documents to Chubb: (1) Zurich's underwriting file for the primary policy issued to Givaudan; (2) internal documents and communications related to the development and inclusion of the coverage exclusion for butter flavoring or diacetyl; (3) Zurich's correspondence with Givaudan, Givaudan Suisse, and Marsh USA related to the development and inclusion of the coverage exclusion for butter flavoring or diacetyl; and (4) any internal documents or communications related to the development and inclusion of the coverage exclusion for butter flavoring or diacetyl. Chubb alleges that it served Givaudan Swiss and other insurers in the Swiss action with copies of its application for assistance. Chubb does not state when such service was made or offer proof of service.

On January 13, 2010, this court granted Chubb's application. Chubb alleges that the following events ensued:

> By that time, Zurich NA's counsel already had been in contact with Chubb in regard to the Application and had a copy of the subpoena. Chubb informed Zurich NA of the Court's Order and formally served the subpoena on Zurich NA on January 14, 2010 with a return date of January 20, 2010. Chubb and Zurich NA immediately discussed the documents sought in the subpoena and reached an agreement regarding timing. Zurich NA agreed to produce the underwriting file in question, which was a finite set of documents already identified by January 20, 2010, as long as Chubb confirmed certain agreements regarding confidentiality and non-waiver of objections. Chubb promptly agreed, and the documents were apparently copied on disk and ready to be sent.
>
> However, on January 19, 2010, when Zurich NA was about to send out documents, counsel for Givaudan instructed it not to comply with the subpoena. Chubb also has received a letter from Zurich NA dated January 20, 2010, again indicating that it is prepared and willing to produce the documents, but at Givaudan's instruction refuses to do so. Givaudan did not provide any notice to Chubb of this instruction nor did it file any documents in this action until counsel

3

entered an appearance on January 21, 2010.

Opposition at 3-4. On January 22, 2010, movants filed their motions to intervene and to quash Chubb's subpoena.

## II. The Motion to Intervene

Givaudan and Givaudan Swiss move to intervene as of right pursuant to Fed R. Civ. P. 24(a) ("R. 24(a)) and, in the alternative, to intervene by permission pursuant to Fed. R. Civ. P. 24(b) ("R. 24(b)").

Rule 24(a) provides that certain parties may intervene in a lawsuit as of right:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

To demonstrate an entitlement to intervene, the proposed intervenor must satisfy four factors:

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007). . "Failure to meet [any] one of the [four] criteria will require that the motion to intervene be denied." *Grubbs v. Norris,* 870 F.2d 343, 345 (6th Cir. 1989). Rule 24(a), however, is "broadly construed in favor of potential intervenors," *Id.* (quoting *Purnell v. City of Akron,* 925 F.2d 941, 950 (6th Cir. 1991)). In the instant case, the factors either favor intervention or do not oppose it.

4

*A.    Timeliness*

Chubb particularly objects that the movants' attempt to intervene is not timely. "The determination of whether a motion to intervene is timely 'should be evaluated in the context of all relevant circumstances.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472-73 (6th Cir. 2000) (quoting *Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990)).  Five factors should be considered in determining timeliness:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.* at 473.

Chubb contends that all factors favor finding the motion to intervene to be untimely, but it asserts arguments only in support of factors one, three, and four. According to Chubb, the application for assistance had already been granted,[2] movants waited more than a month before making an appearance in the case, and Chubb would be prejudiced by granting the motion due to the imminence of its deadline to respond in the Swiss court by February 1, 2010.

Absent unusual circumstances, motions to intervene as of right are generally denied when the judgment in issue has already been entered or a settlement has

---

[2] Chubb also alleges that the requested discovery had already been prepared.  As movants have not had an opportunity to respond to that allegation, the court shall not consider it in making its decision.  Moreover, the court does not consider the preparation of discovery by Zurich, which does not oppose discovery on its own behalf, to be a material factor in its decision, except in determining whether such discovery is burdensome.

5

already been reached.  *See, e.g., In re Troutman Enterprises, Inc.*, 286 F.3d 359 (6th Cir. 2002) (denying the motion where movants waited a year and a half to pursue intervention and only after the bankruptcy courts rendered two decisions); *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854 (6th Cir. 2000) (denying the motion where movant did not file its motion for intervention until after the district court issued its final judgment); and *In re Southern Ohio Correctional Facility*, 24 Fed. Appx. 520, 2001 WL 1667267, at *10 (6th Cir. Dec. 26, 2001) (denying the motion where the motion was not filed until settlement had been reached); *however, see Linton by Arnold*, 973 F.2d 1311 (6th Cir. 1992) (finding the motion to intervene timely when filed within 30 days of the entry of judgment).  The court had already granted Chubb's application for assistance when movants filed their motion.

Nevertheless, in deciding a motion to intervene, a court should look to the progress of the case and investment of resources in the litigation of the case prior to the motion to intervene.  *See Midwest Realty Management Co. v. City of Beavercreek*, 93 Fed. Appx. 782, 2004 WL 604092 (6th Cir. March 22, 2004) (finding that the motion was timely, despite passage of nearly three years from commencement of the action, the expiration of discovery, and a conditional dismissal, where little or no energy had been expended on discovery prior to settlement negotiations).  In the instant case, Chubb's only investment in litigation prior to the filing of the motion to intervene was the filing of the application itself.  Consequently, the progress of the case and the investment of litigation resources  weigh in favor of the motion's being timely.

Much depends upon when movants knew that intervention was necessary.  Chubb contends that movants knew that they should intervene on December 17, 2009,

6

when Chubb filed its application in this court.  Movants assert that the relevant timeline is as follows:  (1) the court entered the order granting the application for assistance on January 13, 2010; (2) Chubb issued its subpoena on January 13, 2010 with a return date of January 20, 2010; (3) Zurich filed objections to the subpoena on January 20, 2010; (4) Givaudan filed an attorney appearance on January 21, 2010; and (4) movants filed the motion to intervene on January 22, 2010.

In the absence of assertions or evidence regarding Chubb's service of the December 17, 2009 application for assistance upon movants, the court is inclined to regard movants' timeline as the appropriate framework for determining whether the motion to intervene was timely.[3]  Had Zurich already produced the discovery which the movants oppose, the motion to intervene would have been untimely.  However, given the rapidity with which movants entered the case after the application had been granted, the fact that Zurich had not yet produced the requested discovery, the minimal resources expended in litigating the case, and the absence of prejudice to Chubb in granting the motion[4] the court finds that the motion to intervene was timely.

---

[3] In other circumstances, the court would provide Chubb an opportunity to submit evidence regarding December service of its application upon Chubb. Two considerations, however, argue against this course of action.  First, the motion to quash is denied.  *See infra.*  Consequently, granting the motion will not prejudice Chubb.  Second, Chubb faces a February 1, 2010 deadline to respond in the Swiss litigation.  Providing an opportunity to further litigate the motion to intervene could well prejudice Chubb in its response in the Swiss litigation.  The court believes, therefore, that the better course is to adjudicate the motion on the information currently before it.

[4] That is, there is no prejudice because the accompanying motion to quash is denied.

B.   *Substantial legal interest*

Movants assert that Chubb's subpoena would result in the release of Givaudan's confidential and proprietary business information, financial information, product information, and trade secret information. Chubb does not contest this assertion. Consequently, the court finds that movants have a substantial legal interest in intervention.

C.   *Whether the movants' ability to protect their interest would be impaired in the absence of intervention*

This factor clearly favors movants. Chubb asserts that had movants not moved to intervene, it would already be in possession of the requested production. Consequently, the court finds that movants' ability to protect their interest would be impaired in the absence of intervention.

D.   *Whether the parties already before the court can adequately protect the proposed intervenor's interest*

"This burden of proof is minimal because it is sufficient that the movants prove that representation may be inadequate." *Linton*, 973 F.2d at 1319. Again, the facts pleaded by Chubb indicate that Zurich is not an adequate protector of the movants' interest, as Zurich would have produced the requested documents absent movants' intervention. Consequently, this factor, also, favors the movants.

For the above reasons, the court GRANTS the motion to intervene.

III.  The Motion to Quash

Movants argue that the court should quash Chubb's subpoena because Swiss procedural law does not permit the discovery sought by the subpoena at this stage of the Swiss proceedings. Consequently, movants assert, until the Swiss court grants

8

Chubb the discovery sought by its subpoena, the subpoena is premature and improper.[5]

Movants err. Section 1782(a) reads in relevant part as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made pursuant to a . . . request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

This section gives great discretion to federal courts in determining whether and how it should order discovery. In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court flatly declined to read additional restrictions on a district court's discretion into the statute:

> [N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there. "If Congress had intended to impose such a sweeping restriction on the district court's discretion, at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect." *In re Application of Gianoli Aldunate,* 3 F.3d 54, 59 (C.A.2 1993); accord *Four Pillars Enterprises Co. v. Avery Dennison Corp.,* 308 F.3d 1075, 1080

---

[5] The court notes in passing that neither side has briefed the issue of Swiss law properly; nor has either side properly submitted evidence in support of disputed issues. Movants rely on practitioners' guides and encyclopedias to support their assertions about Swiss law, while Chubb relies on commentaries and letters to support its assertions. Neither side provides the affidavit of an expert to support its to support its interpretations of foreign law. However, even if movants' assertions regarding the nature of Swiss law are true, the motion to quash is without merit. Consequently, the parties' deficiencies in presenting this issue do not prevent the court from reaching a decision regarding the motion.

(C.A.9 2002); 292 F.3d, at 669 (case below); *In re Bayer AG,* 146 F.3d 188, 193-194 (C.A.3 1998).

*Id.* at 260.  The Court explained:

> A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions--reasons that do not necessarily signal objection to aid from United States federal courts.  A foreign tribunal's reluctance to order production of materials present in the United States similarly may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a).

*Id.* at 261-62 (citations omitted).  The Court added, "When the foreign tribunal would readily accept relevant information discovered in the United States, application of a foreign-discoverability rule would be senseless."  *Id.* (citation omitted).  The Court found, therefore, that even though an applicant for discovery pursuant to § 1782 would not be able to obtain the documents if those documents were located in the foreign jurisdiction under the rules of the foreign tribunal, the applicant was not barred from obtaining those documents pursuant to § 1782.  *See also In re Application of Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir.1 997) (rejecting "any requirement that evidence sought . . . pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding,"); *In re Application of Roz Trading Ltd.*, 2007 WL 120844 (N.D. Ga. Jan. 11, 2007) ("[Section] 1782 aid [i]s appropriate even in situations where the tribunal would not order such discovery itself, or might decide not to accept all discovery properly ordered pursuant to § 1782(a).").

Three relevant requirements must be met before a court may order discovery, therefore:  (1) the person from whom discovery is sought resides or is found in the court's district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by an interested person.  *See Schmitz v. Bernstein,*

10

*Liebhard, & Lifshitz, LLP*, 376 F.3d 79, 82-83 (2d Cir. 2004); *see also Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir. 2009) (holding that once the court orders discovery in accordance with the Federal Rules of Civil Procedure, the applicant is entitled to all relevant information, not just the information allowable pursuant to the rules of the foreign forum).  The Supreme Court regards litigants as "interested persons" within the meaning of the statute.  *Intel Corp.*, 542 U.S. at 256, 256 n.10.

Although a district court may order discovery once these three requirements are met, the court should consider certain factors in informing its discretion to order discovery.  First, if the person from whom the discover is sought is a litigant in the foreign proceeding, the court ought to consider whether the requested discovery might be obtained in the course of the foreign proceeding.  *Id.* at 264.  Second, the court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Id.*[6]  Third, the court should consider whether the request impermissibly seeks types of materials denied the applicant pursuant to foreign law or materials objectionable pursuant to the national policy of the foreign country or the United States.  *Id.*; *see also In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006) (holding that the use of § 1782 to acquire discovery that the applicant was unable to obtain abroad under foreign procedural rules is not a request for impermissible

---

[6] The Supreme Court, however, permitted discovery in *Intel Corp.* even though the relevant tribunal, the European Commission, had said that it did not need or want the district court's help.

11

materials as "that is precisely the type of assistance that the statute was designed to afford"). Fourth, the court should consider whether the request is unduly intrusive or burdensome. *Intel Corp.*, 542 U.S. at 264. Any such requests may be rejected or trimmed. *Id.*[7]

In the instant case, Chubb's application satisfies the requirements for a grant of assistance with discovery pursuant to § 1782: (1) Zurich resides or is found in this court's district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by an interested person, *i.e.*, one who is a litigant before the foreign tribunal. The application also satisfies the factors to consider in determining whether the court should exercise its discretion. Zurich is not a litigant in the foreign proceeding. The parties present no evidence that the nature of the Commercial Court for the Canton of Zurich or the character of its proceedings preclude discovery here, nor is there any indication that the Swiss court would be unreceptive to assistance. There is no indication that the types of materials sought are impermissible for Chubb to have or are objectionable pursuant to Swiss law or Swiss foreign policy. The gravamen of movants' objections relates to the timing of Chubb's request, *i.e.,* that it is premature and may be unnecessary. These are objections based on foreign procedural rules. As already noted, such objections are not relevant to determining whether the types of materials sought are "impermissible." Finally, although Zurich asserted that the request

---

[7] At least one appellate court has held that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Schmitz v. Bernstein, Liebhard, & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (quoting *In re Application of Euromepa S.A.*, 51 F.3d 1095, 1101 (2d Cir. 1995)).

was unduly burdensome, it nevertheless produced the requested discovery quickly. Moreover, now that the discovery has been assembled,[8] production of the requested material would not be intrusive or burdensome. As the requested discovery is permitted by § 1782 and satisfies the factors a court should consider in determining whether to exercise its discretion, movants' motion to quash Chubb's subpoena is denied.

## IV. Conclusion

For the reasons described above, the court GRANTS movants' motion to intervene and DENIES movants' motion to quash Chubb's subpoena.

IT IS SO ORDERED.


Date: January 28, 2010                    /s/ *Nancy A. Vecchiarelli*
                                          United States Magistrate Judge

---

[8] Indeed, Zurich has proffered the assembled discovery to the court for it to retain pending the outcome of Chubb's application. *See* Zurich American Insurance Company's Motion for Leave to Submit Underwriting File under Seal with the Court, Doc. No. 9.

13